STATE of Missouri, Respondent,

v.

Joseph SUMOWSKI and Vicki
Sumowski, Appellants.

Nos. 55309, 55310.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 5, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 1990.

Lee R. Elliott, Troy, for appellants.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendants appeal after verdicts of guilty and sentences in accord with the verdicts on charges of perjury. Section 575.040 RSMo 1986. Joseph Sumowski was convicted of three counts, and Vicki Sumowski of two. All charges involve testimony made on December 30, 1987 in the Juvenile Court of Audrain County, Missouri. The alleged statements of perjury were made during this juvenile proceeding which was held to determine custody of Vicki Sumowski's children after allegations that their stepfather, Joseph Sumowski physically abused them. The issue in the juvenile proceeding was whether the children were abused or neglected by Joseph Sumowski on August 18, 1987. The fact issue for the jury in the present case was whether defendants knowingly lied when they testified in the juvenile proceeding that threats and promises were made to obtain admissions from defendants that Joseph Sumowski committed child abuse. At the request of defendants the charges were tried together. We consolidated the appeals.

The charges against Joseph S. Sumowski are as follows:

### Count I

... the defendant, while a witness under oath legally administered in the case of In the Interest of [B.J.S.] and In the Interest of [D.W.S.] ... with the purpose to deceive, knowingly testified falsely to a material fact, ... that Connie Jensen of the Division of Family Services "told me that I would either take and agree that I took and had abused the kids or else I would never see them again. I said, 'if that's what I have to say to see my kids, then so be it.' " Said testimony by defendant was false and known by defendant to be false. Connie Jensen did not threaten to take away the children, and the issue before the court was whether the children had been abused or neglected.

### Count II

... the defendant, while a witness under oath legally administered in the case of In the Interest of [B.J.S.] and In the Interest of [D.W.S.], ... with the purpose to deceive, knowingly testified falsely to a material fact, ... that he, the defendant, did not tell Detective Richard Sewell that he, the defendant, had grabbed B. by his shirt collar and slapped him on the head for playing on the telephone. Said testimony by defendant was false and known by defendant to be false. Defendant did in fact tell

Richard Sewell that B.J. was using the telephone and that he, the defendant, hit him, B.J., for doing that, and the issue before the Court was whether the children had been abused or neglected.

## Count III

... the defendant, while a witness under oath legally administered in the case of In the Interest of [B.J.S.] and In the Interest of [D.W.S.], ... with the purpose to deceive, knowingly testified falsely to a material fact, ... that Connie Jensen, Richard Sewell and Donna Wilson told him, the defendant, that if he, the defendant would admit that he, the defendant, had abused the children, that they would get me, the defendant, counseling and that would be it. Said testimony by defendant was false and known by defendant to be false. Connie Jensen, Richard Sewell and Donna Wilson did not tell the defendant that if he, the defendant would admit he had abused the children, that they would get him, the defendant, counseling and that would be it. The issue before the Court was whether the children had been abused or neglected.

The charges against Vicki Lynn Sumowski are as follows:

## Count I

... the defendant, while a witness under oath legally administered in the case of In the Interest of [B.J.S.] and In the Interest of [D.W.S.], ... with the purpose to deceive, knowingly testified falsely to a material fact, ... that Connie Jensen of the Division of Family Services, Donna Wilson of the Juvenile Office, and Detective Richard Sewell told me, the defendant, that if I did not admit to Joe having abused B.J., that they would take my children, and it was very doubtful that I would receive custody of my children again. Said testimony by defendant was false and known by defendant to be false. Connie Jensen, Donna Wilson and Richard Sewell did not threaten to take away the children unless defendant admitted that Joe had abused B.J., and the issue before the Court was

whether the children had been abused or neglected.

## Count II

... the defendant, while a witness under oath legally administered in the case of In the Interest of [B.J.S.] and In the Interest of [D.W.S.], ... with the purpose to deceive, knowingly testified falsely to a material fact, ... that she, the defendant, told Richard Sewell that Joe said he hit B.J., then I guess that's what happened, because I don't know, as I was at the laundromat. Said testimony by defendant was false and known by defendant to be false. Defendant did in fact tell Richard Sewell that around 3:00 p.m. when she, the defendant returned and saw B. and asked Joe what happened, Joe told her (the defendant) that he (Joe) slapped him (B.) because he wouldn't do what he (Joe) told him (B.) to do, that he was using the telephone when he wasn't supposed to. The issue before the Court was whether the children had been abused or neglected.

We first consider and dispose of Count II charging Vicki Lynn Sumowski with perjury. We find the court erred in failing to sustain a motion of Vicki Sumowski to dismiss Count II for failure to state a charge of perjury. The state was required by Missouri Approved Criminal Charges 29.10 to allege testimony given by defendant, its falsity, the truth of the matter, and the issue upon which the testimony was given. Count II alleges defendant Vicki Sumowski testified falsely in the juvenile proceeding that she told Richard Sewell, a police officer, her husband Joe hit her son, B.J., that she guessed that's what happened because she didn't know, as she was at the laundromat. However, in attempting to allege the truth of the matter the charge is that Vicki Sumowski did tell Richard Sewell that when she returned and saw her son, she asked Joe what happened, and Joe told her he slapped her son. What the state alleges to be true is the same as what it alleges was her false testimony.

The state contended at trial the motion to dismiss Count II for failure to state a crime came too late because it was made as the trial began. The court denied the motion without comment. Defendant preserved the error in the motion for new trial and alludes to the error in her brief. The requirement to allege a cause of action is jurisdictional and may be raised at any time. Count II is insufficient because it fails to inform defendant of an offense as required by § 545.030.2 RSMo 1986.

We also note the testimony of Officer Sewell for the state. When asked what he learned from defendant Vicki Sumowski he testified:

> And at this time, she told us that—that it was around three o'clock when she returned from the Laundromat. She noticed the redness and bruises on B.J. And she asked Joe how that it was caused. And she said that Joe told her that it was caused because B.J. was playing with the telephone and would not leave it alone. And that he slapped him.

Even if Count II stated a charge of perjury this testimony confirms that the alleged testimony of defendant at the juvenile hearing on December 30, 1987 was true, not false. Further, there was no evidence Vicki Sumowski was present and had actual knowledge of abusive acts by her husband.

Before addressing the charges against defendant Joseph Sumowski and the remaining charge against Vicki Sumowski some general observations regarding defendants' briefs are required. None of the points relied on in either of defendants' briefs comply with the requirements of Rule 30.06(d). They do not state wherein and why the trial court erred. Instead, the points are given in the form of questions, e.g., "Did the trial court commit prejudicial error in accepting the jury's verdict of 'guilty' against Vicki Sumowski in Count II?" We would be justified in declining to review on the merits all of the claims of error except the insufficiency of the charge against defendant Vicki Sumowski in Count II. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978).

For several reasons we will review on the merits. First, trial counsel for defendants died of injuries sustained in a motor vehicle accident after trial and before appeal. Defendants are represented on appeal by new counsel. Second, the Attorney General, briefed and argued the merits. He and this court function under the disadvantage of not having a precise statement of the claims of error of the trial court as required by the Rule. For that reason we will narrowly confine our review on the merits to the arguments advanced by defendants in support of the claims of error.

If we consider, as we must, the evidence in a light most favorable to the verdict, the state made a submissible case on the remaining charge against Vicki Sumowski and the three charges against defendant Joseph Sumowski. *State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983). The facts in evidence which we accept as true and consider together with all inferences that tend to support the verdict are these. On August 20, 1987 Connie Jensen, a Child Services Worker, received a Hot Line call reporting that B.J. had been physically abused by his stepfather. Jensen called Donna Wilson, a deputy juvenile officer. They contacted the Department of Public Safety and the Police Department. At that time Officer Sewell was a Police Juvenile Investigator for the county. Sewell accompanied Jensen and Wilson to the home where defendant Vicki Sumowski lived with her two children, and others. Joseph and Vicki were separated but Joseph visited with the children daily.

Jensen and Wilson visited with B.J. privately. They then spoke with Vicki who informed them that B.J. was injured while playing with neighborhood kids. Joseph said he had been wrestling with B.J. on the floor, had B.J. in a headlock position with his leg, B.J. pulled away and that's how he got the bruises. B.J. was then taken to a hospital for an examination.

Vicki and Joseph Sumowski were then taken to a local police station where they were interviewed by Jensen, Wilson and Sewell. On one occasion Sewell was absent

from the room for an unknown period. Jensen, Wilson and Sewell all testified that no threats or promises were made to either defendant. Most of the interview at the police station was conducted by Officer Sewell.

Jensen testified that during her separate interview Vicki began to cry and said she wasn't there when the incident happened; she returned from a laundromat about three o'clock, found B.J.'s face all swollen and red, asked Joe what happened, and Joe told her he had slapped B.J. Jensen testified Sewell gave Miranda warnings to Joseph, after which Joe admitted he had abused B.J., slapped him—"he had went overboard this time." Jensen expressly testified no one told Joseph to agree that he had abused the children, or else never see them again; and if he would admit he had abused the children, they would get him counseling and that would be all there was to it.

Donna Wilson, a deputy juvenile officer, testified to substantially the same facts as Connie Jensen and confirmed no one made statements to Joseph or Vicki Sumowski constituting threats or promises. Richard Sewell's testimony was consistent with the testimony of Connie Jensen and Donna Wilson.

On August 20, 1987, The Division of Family Services took charge of Vicki Sumowski's two children. They were returned to her a few days later.

Joseph Sumowski was charged with criminal child abuse. In October, 1987, at a preliminary proceeding in his abuse case Vicki Sumowski refused to testify for the state about Joseph Sumowski's admission of slapping B.J. She then said her earlier statement about an admission by Joseph was untrue and was made only to keep her children. The children were again taken by Division of Family Services. An abuse and neglect petition was filed and a hearing held on December 30, 1987.

Both defendants testified at the juvenile court proceeding. They admitted making statements to Jensen, Wilson and Sewell but, in substance, claimed that they did so only under threats and promises. They claimed threats were made that the children would be permanently withdrawn unless Vicki acknowledged Joseph's admission of slapping B.J. and Joe admitted that he did slap B.J. Also, the Sumowskis claimed they were promised counseling would close the matter. They testified in the juvenile proceeding that B.J. was injured playing with children on August 18, 1987 and not through any act of abuse by Joseph Sumowski.

### Charge Against Vicki
### Sumowski—Count I

Count I alleges Vicki Sumowski testified falsely at the juvenile hearing when she said Jensen, Wilson and Sewell told her they would take her children, and return of her children was doubtful unless she admitted her husband Joseph abused B.J. Proof of this charge required the state to produce two witnesses to testify that the testimony was false. Section 575.070(1) RSMo 1986; *State v. Burgess*, 457 S.W.2d 680, 681 (Mo. banc 1970).

The state offered the testimony of Jensen, Wilson and Sewell. Although Sewell denied any statements of threat or promise he acknowledged he was not always present during an interview with Vicki Sumowski. He left the room for an unknown period. However, Jensen and Wilson denied any statements of threat or promise. Wilson testified she did not remember all of the conversation between those present and Vicki Sumowski but remained firm that there were no threats or promises. Wilson talked with Vicki Sumowski about her not protecting the children by protecting her husband. She suggested Vicki would have to get counseling, get Joe out of her life and cooperate with the authorities. Connie Jensen acknowledged that Donna Wilson made such statements to Vicki Sumowski. As a question of fact it may be argued that Vicki Sumowski misinterpreted the statements of Wilson or Jensen and that her juvenile court testimony represented a misinterpretation. However, matters of fact were for the jury and the jury was free to accept the testimony of the state's witnesses that no threats con-

cerning to loss of custody were made. There was evidence to support a finding defendants knowingly testified falsely regarding statements of threat or promise. The claim of error that the state failed to make a submissible case on Count I is denied.

■ Vicki Sumowski also claims error in allowing the prosecuting attorney to refer to the child abuse charge against Joseph Sumowski in his opening statement and to adduce testimony about child abuse. This claim fails for several reasons. First, defendants were tried together at the request of defendants. Joseph Sumowski testified on direct examination regarding the child abuse charge, trial, conviction, and the pending appeal. He was not prejudiced by references to the criminal abuse case. She may not now claim different treatment.

■ Second, the question of whether Joseph Sumowski abused B.J. and his brother, was relevant at least on the question of credibility of all witnesses. If there was abuse as a general condition then the evidence was probative of motive of the witnesses for the state to be truthful and the defendants untruthful. Further, the conditions of abuse, mentioned in the opening statement and the evidence, were relevant to show the "complete story," "to establish a complete and coherent picture" of the events leading to the commission of the charged crime. *State v. Johnson,* 753 S.W.2d 576, 581 (Mo.App.1988); *Walls v. State,* 779 S.W.2d 560, 562 (Mo. banc 1989). The nature and extent of the abuse, if any, was relevant on the issue of motive of Jensen, Wilson, Sewell and the defendants to testify truthfully.

■ Vicki Sumowski next claims the court erred in admitting photographs of the child's bruised face and legs together with testimony of stomach distress. Again, the evidence was relevant to give the jury a complete and coherent picture of the events surrounding the prosecution. Further, defendants did not contest the existence of injuries. They had an opportunity to prove different causation. We find no abuse of discretion in rulings admitting the photographs. *State v. Driscoll,* 711 S.W.2d 512,

516 (Mo. banc 1986) *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986).

There was some evidence suggesting Joseph Sumowski was guilty of abuse of B.J.'s brother, D.W.S. Vicki claims this was error. This claim of error was not preserved in defendants' motion for new trial. One reference at trial to such evidence was withdrawn after defense objection. We find no plain error because of the nature of the charge and the evidence.

■ During Jensen's testimony defense counsel was prepared to cross-examine about directions in an instruction manual furnished to Division of Family Services' employees. Jensen acknowledged she received the manual. The manual contains instructions for investigating complaints of child abuse. The court refused to permit cross-examination regarding the manual when the state objected and claimed defendants violated discovery Rule 25.05. The state filed a motion for discovery. The motion requested "the parts of any books, documents, papers, photographs, or objects and exhibits, which the Defendant will introduce at trial." Defense counsel attempted to excuse production on two grounds: (1) the witnesses for the state were aware of the manual and it was difficult to obtain; and, (2) the defense acquired a copy the day before trial.

It appears the objection was not well taken. Defendant intended to refer to the manual identified by state's witness Jensen as an instruction manual furnished to every child services' worker containing directions for investigating complaints of child abuse. The objection came before any indication defendant would introduce the document at trial as a matter of evidence, if ever. The sanctions available under Rule 25.16 were a continuance, exclusion of such evidence, or such other orders as the court deemed just under the circumstances. The Rule does not exclude cross-examination from a document not furnished under discovery and not intended to be offered in evidence. The witness was familiar with the manual. She received a copy from her employer. Defense counsel informed the court the man-

ual contained instructions which, if acknowledged and followed, would tend to support defendant's claim that Wilson and Jensen made statements which were threatening or which promised summary disposition of the child abuse problem. Defense counsel also claimed the manual contained directions to videotape or take written statements, directions violated by Wilson and Jensen. Defendant argued this would tend to support defendant's memory and juvenile court testimony. The court sustained the prosecutor's "really anticipatory objection to the offer of these—exhibits, which have been marked as Defendant's Exhibit 1 and Defendant's Exhibit 2." The court then said it would continue to sustain objections "if they were offered." This ruling may be proper under Rule 25.16. However, the court went further and refused to permit reference to the manual during cross-examination.

The particular problem with this claim of error is that defendant's claim on appeal is not the same as argued at trial. At trial the issue was a right to cross-examine in spite of a failure to disclose the training manual. Defendant here argues only that discovery sanctions against the defendant violate due process guarantees when applied to the defendant. Defendant relies on *State v. Bashe*, 657 S.W.2d 321 (Mo.App. 1983). We need not decide whether this argument has merit. It is not the argument that was made to the trial court. For that reason alone the trial court did not err in excluding use of the manual during cross-examination on the ground argued here.

■■■■ Vicki Sumowski next claims the court erred in restricting cross-examination about continuing disputes between her and The Division of Family Services over placement of the children. Defendant contends Jensen had a motive to color her testimony, the cause of the continuing disputes. Generally, the scope of cross-examination is within the sound discretion of the trial court. *State v. Weekley*, 621 S.W.2d 256, 260 (Mo.1981). On this issue defendant made an offer of proof. The questions and answers do not indicate how Jensen would

have any motive for testifying inaccurately. After the juvenile court hearing on December 20, 1987 and before the criminal child abuse trial, Jensen disqualified herself in the custody case. At the time of defendants' trial on the present charges Jensen was no longer a participant and was not a party to any continuing dispute. Point denied.

■■■■ Finally, defendant claims error in the state's closing argument. Wide latitude is accorded counsel during closing argument, and the trial court has broad discretion in controlling summation. *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983). *Cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The prosecuting attorney argued child abuse in a perjury case. However, the argument was supported by evidence. The prosecutor argued possible brain damage. There was no direct evidence of that possibility, but this argument was based on legitimate inferences from the evidence of abuse and a statement by witnesses that Joseph Sumowski admitted he "lost control" or "went overboard this time." The court sustained an objection to final argument on length of sentence, a matter not developed in opening argument. We find no abuse of discretion on objections to closing argument.

### Charges against Defendant Joseph Sumowski—Three Counts

The only claim of error argued by Joseph Sumowski which differs from the claims and arguments advanced by Vicki Sumowski is the court erred in submitting all three counts because the juvenile court testimony, if knowingly false, was not material to a disputed issue in the juvenile court proceeding. The claims of error shared with Vicki Sumowski are denied.

■■■■ We reject Joseph Sumowski's argument the evidence was insufficient to support a finding his juvenile court testimony was material to disputed issues in the juvenile court proceeding. The general issue before the juvenile court was whether the children should be protected by removing them from custody of Vicki Sumowski.

**388**

The alleged cause and ground for removal was child abuse by Joseph Sumowski. Both defendants claimed there was no child abuse. Joseph Sumowski testified: (1) Connie Jensen told him he had to admit abuse if he wanted to see the children again; (2) he did not tell Officer Sewell he slapped B.J.; and, (3) he was told that if he admitted abusing the children and agreed to counseling that would close the matter. If the juvenile court accepted that testimony as true it would have supported a finding of nonabuse. The decisive disputed issue was whether there was abuse. The testimony constituted statements of fact which could substantially affect the course or outcome of the cause. "A fact is material, regardless of its admissibility under rules of evidence, if it could substantially affect, or did substantially affect, the course or outcome of the cause, matter or proceeding." Section 575.040.2 RSMo 1986. During trial the state offered substantial evidence to support a finding that the three statements in question were material on the issue of the existence of prior child abuse. Defendant correctly argues materiality is not a matter that can be inferred in a perjury case. *State v. Roberson*, 543 S.W.2d 817, 820 (Mo.App.1976). However, the evidence was sufficient for the trial court to determine that testimony was material to a disputed issue at the juvenile court hearing.

We affirm judgments on verdicts against defendant Vicki Sumowski, Count I, and against defendant Joseph Sumowski on all three counts. The judgment and sentence against Vicki Sumowski on Count II is reversed.

PUDLOWSKI, P.J., and CRANDALL, J., concur.