STATE of Missouri, Respondent,

v.

Ron JARRETT, Appellant.

No. SD 29391.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 17, 2009.

Motion for Rehearing or Transfer Denied
Dec. 3, 2009.

---

S. Dean Price, Springfield, for Appellant.

Chris Koster, Atty. Gen. and Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., Jefferson City, for Respondent.

Before BATES, P.J., BARNEY, J., and BURRELL, J.

PER CURIAM.

Ron Jarrett ("Appellant") appeals his conviction by the trial court for one count of the Class C felony of perjury, a violation of section 575.040.[1] Appellant was sentenced to 120 days in the Douglas County jail with credit given for the 45 days he had previously served awaiting trial. He raises one point on appeal. It is without merit. The judgment of the trial court is affirmed.

Viewing the evidence in the light most favorable to the trial court's verdict, *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005), the record reveals that Jason MacPherson ("Prosecuting Attorney MacPherson") was elected as the Wright County Prosecuting Attorney in January of 2007 and he remained in that position throughout this matter. Tom Cline ("Mr. Cline"), the duly elected Prosecuting Attorney of Ozark County, had been friends with Prosecuting Attorney MacPherson since Prosecuting Attorney MacPherson "was a small child." Cynthia MacPherson ("Ms. MacPherson"), who is Prosecuting Attorney MacPherson's mother, a lawyer, and a former prosecuting attorney, had at one time employed Mr. Cline as a private investigator. Also, Appellant was at one time married to Mr. Cline's daughter. They apparently divorced in 2003.

After taking office, Prosecuting Attorney MacPherson went through several

---

1. Unless otherwise stated, all statutory references are to RSMo 2000.

boxes of old files in order to determine if charges needed to be filed in various cases. In one of those boxes, he discovered a file relating to crimes possibly committed by Appellant and after further discussions with the investigating officer on the case, Deputy Donna Sparnicht ("Deputy Sparnicht"), requested additional information from Deputy Sparnicht and the purported victim. Deputy Sparnicht reported to Prosecuting Attorney MacPherson that the victim would like to see the case proceed and Prosecuting Attorney MacPherson filed charges against Appellant for the Class C felony of deviate sexual assault, the Class C misdemeanor of third degree assault, the Class B misdemeanor of second degree assault, and three counts of misdemeanor sexual misconduct.

Appellant retained the legal services of Carl E. Smith ("Attorney Smith") to defend the allegations against him. Prior to the preliminary hearing in that matter, Attorney Smith filed a motion to disqualify Prosecuting Attorney MacPherson based on numerous allegations alleged by Appellant. In his motion, Appellant contended, among other things, that Prosecuting Attorney MacPherson had a grudge against him based on various grounds; that Prosecuting Attorney MacPherson disliked Appellant because Appellant had been "friendly" with Prosecuting Attorney MacPherson's wife; that Prosecuting Attorney MacPherson caught Appellant engaging in sexual intercourse with Ms. MacPherson; that Prosecuting Attorney MacPherson was trying to assure Appellant's silence because Appellant had damaging information about numerous influential people; and that Appellant had witnessed an act of sexual intercourse between Mr. Cline and Mr. Cline's adopted daughter.

By agreement, a hearing was held on the motion to disqualify Prosecuting Attorney MacPherson in the Douglas County Circuit Court by the Honorable Don M. Henry. Venue was not changed. It was Appellant's testimony given under oath at this hearing which led to the current case under review in which he was charged and convicted of perjury.[2] It should be noted at this juncture that following the hearing to disqualify Prosecuting Attorney MacPherson, but prior to the trial court's ruling on the motion to disqualify, Prosecuting Attorney MacPherson voluntarily recused himself from this matter and requested a special prosecutor be appointed in his stead.

■ On August 27, 2008, the trial court appointed a special prosecutor to represent the State in lieu of the Douglas County Prosecuting Attorney's office. On September 15, 2008, the State was given permission from the trial court to file a "Substitute Information." The "Substitute Information" contained the following allegations against Appellant:

that on July 26, 2007, in the County of Douglas ... [Appellant], while a witness under oath legally administered ... with the purpose to deceive, knowingly testified falsely to a material fact, namely in the underlying case [Appellant] filed a Motion to Disqualify Prosecuting Attorney, in said [m]otion [Appellant] moved to disqualify [Prosecuting Attorney] MacPherson, the elected Prosecuting Attorney of Wright County ... among the grounds cited in [Appellant's] [m]otion were allegations that the Ozark

---

2. The record also shows that on April 7, 2008, a grand jury indicted Appellant on three charges of the Class C felony of perjury arising from statements made by Appellant during the course of the hearing to disqualify Prosecuting Attorney MacPherson. Thereafter, Judge Henry recused himself from the matter followed by the recusal of other assigned judges such that Judge Gary Witt ultimately became the trial judge in this matter.

County Prosecuting Attorney, [Mr.] Cline, had undue influence over [Prosecuting Attorney] MacPherson, that [Ms.] MacPherson, an attorney and mother of [Prosecuting Attorney] MacPherson had undue influence over [Prosecuting Attorney] MacPherson, and that '[Prosecuting Attorney] MacPherson knows that [Appellant] has much information as to the activities of [Prosecuting Attorney] MacPherson, [Ms.] MacPherson, [Mr.] Cline, former Judge Roger Wall, and [Judge Moody] and desires to place [Appellant] in a position where his silence is assured'; on July 26, 2007[,] a hearing was held on [Appellant's] Motion to Disqualify . . . at that hearing [Appellant] testified that [Appellant] observed [Judge] Moody exchange with [Mr.] Cline a large stack of money in a brown paper bag, on [Mr.] Cline's boat; that [Appellant] testified that he observed [Mr.] Cline and [his adoptive daughter] Rose Purcell [ ("Ms. Purcell") ] engage in sexual intercourse; and that [Appellant] testified that [he] had sexual intercourse with [Ms.] MacPherson at a Blues Festival in Mountain Home, Arkansas in 2003 which was observed by [Prosecuting Attorney] MacPherson. Each of [Appellant's] statements was false and material in that it could substantially affect the outcome of the Motion to Disqualify by showing a possible ground to disqualify [Prosecuting Attorney] MacPherson from prosecuting the pending felony.[3]

The trial in Appellant's perjury case was held on September 26, 2008. At that trial, Prosecuting Attorney MacPherson testified that his decision to file charges against Appellant had nothing to do with his relationship with Mr. Cline or any personal feelings he may have had against Appellant. He further related he did not discuss his decision to file charges against Appellant with Mr. Cline. Additionally, Prosecuting Attorney MacPherson testified that Appellant's allegations of a conspiracy involving him, Judge Moody, Mr. Cline, and Ms. MacPherson were totally untrue. He related he neither spoke with Mr. Cline nor Judge Moody about Appellant's alleged crimes and he did not observe his mother, Ms. MacPherson, engaging in sexual relations with Appellant. He denied filing charges against Appellant in an effort to silence him or due to some personal vendetta against him based on a possible sexual relationship between Appellant and his mother. He felt that the "bizarre" nature of Appellant's assertions did not warrant his recusing himself from Appellant's prosecution, and the only reason he eventually requested a special prosecutor be appointed was because it became clear that he was going to be a witness in the case. Prosecuting Attorney MacPherson related that had any of Appellant's allegations contained any merit he would have immediately requested a special prosecutor be appointed, but because he felt the assertions were baseless he chose not to do so.

Mr. Cline testified that Appellant had, in fact, been married to one of his daughters, and acknowledged that all of Appellant's allegations relating to a conspiracy among Prosecuting Attorney MacPherson, Ms. MacPherson, himself, former Judge Roger Wall, and Judge Moody "to control things in this circuit" were not true. He also related that Appellant's allegations of his having paid large sums of money to Judge Moody had no validity and he further testified that he had never had an inappropriate relationship with his adopted daughter,

3.  "[T]he law is settled that where there are several assignments of perjury in an information, substantial proof of any one of them will support a conviction." *State v. Brinkley*, 354 Mo. 337, 189 S.W.2d 314, 325 (1945).

Ms. Purcell, as asserted by Appellant.[4] Mr. Cline also testified that in August of 2006 Appellant telephoned him and admitted he had been lying about the allegations against Mr. Cline.

Ms. MacPherson testified that she had never met Appellant and she denied having sexual relations with him in a vehicle at a music festival.

Judge Moody testified that he did not "think [he had] ever met" Appellant and denied ever accepting money from Mr. Cline while on a boat. He also denied there was any conspiracy as asserted by Appellant and denied ever discussing Appellant's case with Prosecuting Attorney MacPherson. He further related that he was not surprised Attorney Smith was involved in making these claims on Appellant's behalf.

Appellant testified on his own behalf at his perjury trial. Appellant related that after consulting with over 100 attorneys he chose Attorney Smith to represent him because Attorney Smith had represented him in his divorce and he was the only attorney that would take his case. He stated that even when Attorney Smith represented him in his divorce from Mr. Cline's daughter, Attorney Smith "was attempting to get information out of [him] . . . in reference to primarily [Judge] Moody, initially. He has a gross dislike for [Judge] Moody. . . . Then it went to [Ms.] MacPherson. It went to multiple other attorneys. . . ." Appellant also related that as part of his compensation for Attorney Smith's services he "agree[d] to do things for [Attorney Smith] that didn't directly have effect on [his] case" such as "writing affidavits."[5] He stated that he was influenced by Attorney Smith when he wrote the affidavits and that at the time he wrote the affidavits he felt the statements were, in fact, true. Appellant related that as "time progressed, some of the things that [Attorney] Smith had told [him] w[ere] done by Mr. Cline, by [Prosecuting Attorney] MacPherson, and by others including [Judge] Moody, which later [he] found to be lies, were completely fabricated. [He] was misled grossly" by Attorney Smith.

Appellant also stated at the hearing on the motion to disqualify Prosecuting Attorney MacPherson held in July of 2007 that he had not been prepared to testify about the alleged conspiracies involving Prosecuting Attorney MacPherson, Mr. Cline, Ms. MacPherson and Judge Moody and only found out five minutes before the hearing "that [he] was going to testify to it." He stated Attorney Smith told him that prior to the hearing he was planning on showing the affidavits to Prosecuting Attorney MacPherson in an effort to get him to recuse. He also related that at the time of his testimony he did believe that he had engaged in sexual intercourse with Ms. MacPherson at an out-of-state blues festival and that Mr. Cline had been involved sexually with his adopted daughter. However, he related he never saw Judge Moody accept a large sum of money in a paper sack from Mr. Cline while on a boat; instead, he saw Mr. Cline hand Judge Moody a paper sack containing a twelve-pack of beer along with the change from the beer's purchase. According to Appellant, Attorney Smith told him it was not perjury to make these statements "because it's not a pretrial motion" and he felt that Attorney Smith "wanted to hurt these people, and he used [Appellant]." On the

---

4. Ms. Purcell also testified that the allegations were untrue.

5. Some of these affidavits were attached to the motion to disqualify Prosecuting Attorney MacPherson which was filed with the trial court.

day he testified at the motion hearing, Attorney Smith told Appellant they were going to court to "make [Prosecuting Attorney MacPherson] look bad, he was going to set [Prosecuting Attorney MacPherson] up to commit a misdemeanor crime.... [Attorney Smith] completely lied to [him] about what [they] were doing in the courtroom that day." He stated he never read the motion to disqualify and had no knowledge that the affidavits he had prepared were attached to it. He also related that when he testified at the hearing he was "*confused*" and had no clear intention except to tell the truth.

At the close of all the evidence, the trial court found Appellant's "statements were material to the purpose of the hearing ..." such that Appellant was guilty of perjury. He was then sentenced as previously set out. This appeal followed.

■■■ In his sole point relied on, Appellant maintains the trial court erred in convicting him of the crime of perjury

> because there was insufficient evidence to establish that the statements made by [Appellant] were material in that the statements made by [Appellant], under oath, during [the] hearing to disqualify [Prosecuting Attorney] MacPherson, did not, nor could have, substantially affect[ed] the course or outcome of the matter.

In *State v. Mayfield*, this Court stated 'On review of criminal matters tried by the court without a jury, the standard of review is the same as in cases tried by a jury. We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. We determine whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt. Moreover, this Court does not weigh the evidence or determine the reliability or credibility of witnesses.'

*State v. Mayfield,* 83 S.W.3d 103, 104–05 (Mo.App.2002) (quoting *State v. Matney,* 979 S.W.2d 225, 226 (Mo.App.1998)) (internal citations omitted).

■■■ To prevail in a perjury conviction, the state must prove beyond a reasonable doubt that the defendant "with the purpose to deceive, ... knowingly testifies falsely to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, public body, notary public or other officer authorized to administer oaths." § 575.040.1; *see State v. Chavez,* 735 S.W.2d 127, 130 (Mo. App.1987). "A fact is material, regardless of its admissibility under rules of evidence, if it could substantially affect, or did substantially affect, the course or outcome of the cause, matter or proceeding." § 575.040.2; *see State v. Fletcher,* 948 S.W.2d 436, 438 (Mo.App.1997). "Knowledge of the materiality of the statement is not an element of this crime ...." § 575.040.3; *see State v. Sumowski,* 792 S.W.2d 381, 388 (Mo.App.1990). Additionally,

> [n]o person shall be convicted of a violation of section[ ] 575.040 ... based upon the making of a false statement except upon proof of the falsity of the statement by:
>
> (1) The direct evidence of two witnesses; or
>
> (2) The direct evidence of one witness together with strongly corroborating circumstances; or
>
> (3) Demonstrative evidence which conclusively proves the falsity of the statement; or
>
> (4) A directly contradictory statement by the defendant under oath together with

(a) The direct evidence of one witness; or

(b) Strongly corroborating circumstances; or

(5) A judicial admission by the defendant that he made the statement knowing it was false. An admission, which is not a judicial admission, by the defendant that he made the statement knowing it was false may constitute strongly corroborating circumstances.

§ 575.070.

Appellant contends the statements he made at the hearing on the motion to disqualify Prosecuting Attorney MacPherson were immaterial and, therefore, not perjurious. He argues that because Prosecuting Attorney MacPherson voluntarily recused himself prior to the trial court's ruling on the motion to disqualify and "no ruling on the merits was made ... the [m]otion became moot, [such that Appellant's] statements did not substantially affect the outcome of the hearing." Accordingly, he asserts the "only issue truly before this court is whether [Appellant's] statements *could have* substantially affected the outcome of the [m]otion hearing."

■ It is clear that the elements of the crime of perjury "do not include the requirement that the untrue testimony ... successfully deceive the [trier-of-fact]." *Fletcher*, 948 S.W.2d at 438. As explained in *Harris v. Quincy, O. & K.C.R. Co.*, 172 Mo.App. 261, 157 S.W. 893, 896 (1913), a civil perjury case,

'[t]he fact that the evidence given did not affect the mind of the court in rendering judgment is no defense, as the only question to be determined on a charge of perjury is whether the evidence *might have affected the decision.*' The test as to materiality is whether the false testimony *could have influenced*

the tribunal in the determination of the case.

(Internal citation omitted) (emphasis added); *see also State v. Lehman*, 175 Mo. 619, 75 S.W. 139, 140–141 (1903) (holding that in a prosecution for perjury, the fact that the perjured testimony occurred after the grand jury had already voted in favor of indictment but prior to returning the signed indictment to the court, did not render such testimony immaterial). As such, it matters not that the trial court's ruling came after Prosecuting Attorney MacPherson's voluntary recusal.

We also determine that the statements made by Appellant at the hearing on his motion to disqualify Prosecuting Attorney MacPherson were material in that they "could [have] substantially affect[ed] ... the course or outcome of the cause, matter or proceeding." § 575.040.2; *see Sumowski*, 792 S.W.2d at 388. The testimony elicited during the course of the hearing on the motion to disqualify was directed to the issue of whether Prosecuting Attorney MacPherson should have been disqualified from Appellant's case due to his purported involvement in conspiracies or his relationships with Mr. Cline, Judge Moody and Ms. MacPherson which, according to Appellant, caused Prosecuting Attorney MacPherson to wrongfully bring charges against Appellant and affected Prosecuting Attorney MacPherson's ability to deal with him fairly. The testimony offered by Appellant at the hearing on the motion to disqualify was clearly material to the allegations set forth in that motion. Had the trial court believed all or even some of Appellant's statements, the trial court could have been influenced to exercise its discretion in removing Prosecuting Attorney MacPherson for cause due to interest or bias. *See* § 56.110; *State v. Harris*, 477 S.W.2d 42, 45 (Mo. banc 1972).

In our examination of the evidence and inferences in the light most favorable to the verdict, *Vandevere,* 175 S.W.3d at 108, and keeping in mind that this Court neither weighs the evidence nor determines the credibility of the witnesses, *Mayfield,* 83 S.W.3d at 104, it is clear that the direct testimony of at least two witnesses discredited each perjurious statement made by Appellant. § 575.070(1). Additionally, Appellant made at least one judicial and several non-judicial admissions showing that he knew his prior statements were false. *See* § 575.070(5). Judge Moody and Mr. Cline testified at the perjury trial that they never exchanged a large stack of money in a paper sack while on a boat owned by Mr. Cline. Appellant also testified at his perjury trial that he never made such an observation; instead, he observed Judge Moody and Mr. Cline exchanging a paper sack containing a twelve pack of beer and the change from the purchase of the beer. Nevertheless, Appellant had testified at the hearing on the motion to disqualify that the event occurred. Further, both Mr. Cline and Ms. Purcell testified that Appellant's assertions that they had engaged in sexual relations were baseless. According to Mr. Cline, Appellant also admitted to him that the allegation was not true. Furthermore, Mr. Cline testified that Appellant admitted to him that the matter of Mr. Cline's "accepting money from [Judge] Moody" was also not true. Also, Prosecuting Attorney MacPherson and Ms. MacPherson testified that Ms. MacPherson and Appellant never had a sexual relationship and that Prosecuting Attorney MacPherson had never observed such activities.

There was sufficient evidence upon which the trial court could find the statements made by Appellant were material and false facts which substantially could have affected the trial court's determination regarding Appellant's motion to disqualify. *See Sumowski,* 792 S.W.2d at 388. Point denied.

The judgment and sentence of the trial court is affirmed.