**STATE of Missouri, Respondent,**

v.

**Bernard D. BURCH, Appellant.**

**No. WD 51762.**

Missouri Court of Appeals, Western District.

Feb. 18, 1997.

---

**527**

Lee M. Nation, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for Respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LOWENSTEIN, Judge.

Appellant, Bernard Dale Burch, (Burch) was jury-tried in Ray County, and convicted of kidnapping, assault in the second degree, and armed criminal action stemming from a confrontation with Michael McNelly, who Burch alleges raped his niece. Burch was sentenced as a prior offender to seven, five, and twelve years respectively with sentences to be served concurrently. Burch appeals his conviction alleging the trial court erred in: 1) failing to grant his request for a mistrial after a state witness mentioned that the victim, McNelly had taken a "stress test" (lie detector test) regarding the alleged rape of Burch's niece; 2) overruling his motion for

judgment of acquittal as to the offenses of armed criminal action, kidnapping, and second degree assault due to insufficient evidence.

On December 26, 1994, the Ray county sheriff's office received a complaint that the victim, McNelly, raped Burch's niece. The sheriff questioned McNelly two days later but did not arrest him. At Burch's trial, the sheriff testified that he investigated the rape allegation and had both McNelly and the woman, submit to "stress tests." In addition, the sheriff testified that when he questioned McNelly about the rape, he made a complaint against Stacy McIntire and Burch, the substance of which is the basis of this case.

After hearing the rape allegations, Burch and Stacy McIntire, the girl's step-father, went to McNelly's house. McIntire displayed a gun and placed it against McNelly's head compelling him into the car. The two men forced McNelly into the front passenger seat. Burch got into the back seat to restrain McNelly by placing his arm around McNelly's neck while McIntire drove the vehicle. The two men repeatedly accused McNelly of raping Burch's niece and each time he denied the allegation, McIntire punched him with his elbow while Burch held him down. There is evidence that Burch also slapped McNelly. As a result of the beating, McNelly suffered injuries to his face and head, including: swelling of the eyes and ears, bleeding of his nose, lips and eye area, and bruising around his neck.

En route, McIntire informed McNelly that they were taking him to the river and, if he did not tell the truth about raping his stepdaughter, they would throw him in the river. Burch further threatened McNelly by telling him if thrown in the river, he would suffer from hypothermia. Burch explained, "You'll be real cold, and then you'll be real hot, and then you die." McIntire was unable to drive all the way to the river due to the muddy terrain. Stopping the car, McIntire threatened to kill McNelly and pushed his head out the car window. An object was then pushed against the back of McNelly's head, someone said, "Bang," and McIntire and Burch laughed. Finally, McIntire drove back to

town, released McNelly, and again threatened to kill him if he went to the police.

At trial, Burch did not take the stand, but McIntire testified. McIntire admitted carrying an unloaded gun on the date of the incident, but stated Burch had no knowledge of the gun. In closing argument, defendant's counsel argued that Burch was unaware of McIntire's plan to confront McNelly and that Burch was merely an observer.

■ In his first point on appeal, Burch maintains the trial court erred in denying his request for a mistrial when the state's witness, Sergeant Chester, blurted out that he had given "stress tests" to both parties pursuant to his investigation of the rape charge against McNelly. Apparently, "stress test" referred to Voice Stress Analysis or, in lay terms, a lie detector test. The transcript reads as follows:

Q. Why didn't you request a warrant on Mr. McNelly for rape?

A. Because there was two conflicting stories.

Q. And did you investigate any further, or do anything else, to determine who was telling the truth?

A. Yes, sir, had Gene Darnell, former sheriff at Lafayette County give both parties—

Mr. Nation: Objection.

A. —stress tests.

Mr. Nation: I'll object and ask for a mistrial.

The Court: Objection sustained.

Mr. Nation: I'll ask for a mistrial.

The Court: The court is going to overrule the mistrial. The jury is instructed to disregard the response given by the witness.

Burch argues that a mistrial was the proper remedy because the above testimony was elicited early in the trial from the first witness in the case. He maintains the witness intentionally blurted out the information without waiting for the court to rule on the objection. While not condoning the behavior of this witness in failing to wait for a ruling on the objection, the court cannot say that a mistrial is required under these facts.

■ The standard of review where the trial court denies a request for a mistrial is abuse of discretion. *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987). Mistrial is a drastic remedy appropriate in the most extraordinary circumstances where there is no other way to remove unfair prejudice. *State v. Sidebottom*, 753 S.W.2d 915, 919 (Mo. banc 1988). Where a witness volunteers inadmissible information, the trial court is in the best position to determine the prejudicial effect and to determine what measures, if any, are necessary to cure that effect. *State v. Davis*, 825 S.W.2d 948, 952 (Mo.App.1992).

■ It is true that the results of polygraph tests are inadmissible in criminal trials in this state. *State v. Biddle*, 599 S.W.2d 182, 185 (Mo. banc 1980). In *Biddle*, the court reversed the defendant's conviction for first degree robbery finding the polygraph test results were inadmissible and none of the other circumstantial evidence was sufficient to support the conviction. *Id.* This case is distinguishable from *Biddle* which prohibited the use of results of a polygraph to show the guilt or innocence of *the accused* at trial. *Id.* In this case, Burch, not McNelly, is the accused and the investigation of the rape allegation is a separate matter.

■ Even if McNelly were the accused, the statement that he and his alleged victim took "stress tests" does not rise to the level of admitting evidence of the test results, as was the case in *Biddle*. Here, the sheriff made no mention of the results at all. The mere reference to "stress tests" without more is too vague to prejudice the jury against the defendant. Several Missouri cases hold that vague references to uncharged crimes are not grounds for a mistrial. *State v. Anderson*, 698 S.W.2d 849, 852 (Mo. banc 1985); *State v. Price*, 787 S.W.2d 296 (Mo.App.1990); *State v. Rhodes*, 829 S.W.2d 41, 44 (Mo.App.1992).

■ When a witness unexpectedly volunteers inadmissible information, the action called for rests in the trial court's discretion. *Price*, 787 S.W.2d at 302, (citing *State v. Williams*, 660 S.W.2d 360, 361 (Mo.App. 1983). The prejudicial effect of a statement

can be removed by striking the statement and instructing the jury to disregard it. *State v. Harris,* 547 S.W.2d 473, 475 (Mo. banc 1977)). This court finds no abuse of discretion in the trial court's decision to overrule the motion for a mistrial and instead to instruct the jury to disregard the statement. Further, there is no contention nor evidence the prosecutor orchestrated the officer's volunteering the stress test testimony. Point denied.

▇▇▇ In his next three points, Burch appeals the denial of his motions for judgment of acquittal on the charges of armed criminal action, kidnapping, and second degree assault alleging insufficient evidence to support the convictions. Where appellant challenges the sufficiency of the evidence, the evidence together with all reasonable inferences is viewed favorably to the verdict and evidence or inferences to the contrary are ignored. *State v. Mallett,* 732 S.W.2d 527 (Mo. banc 1987). Appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found a defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

▇▇▇ Burch argues the evidence is insufficient to prove he acted as an accomplice in committing the offense of kidnapping. "A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found . . . for the purpose of . . . inflicting physical injury on . . . or terrorizing the victim . . ." § 565.110, RSMo 1994. Burch argues the evidence is insufficient to show that he acted in concert with Stacy McIntire to kidnap McNelly.

A person is criminally responsible for the conduct of another when . . . [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aides or agrees to aid or attempts to aid such other person in planning, committing, or attempting to commit the offense. § 562.041.1(2) RSMo 1994.

The evidence need not show that the defendant personally committed every element of the crime. . . . [I]ndicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after the commission of the crime. Proof of any form of participation by defendant in the crime is enough to support a conviction and his presence at the scene, his companionship before and after the offense are circumstances from which one's participation in a crime may be inferred. *State v. Carter,* 849 S.W.2d 624, 627 (Mo.App. 1993); *State v. Lager,* 744 S.W.2d 453, 456 (Mo.App.1987).

The direct evidence and inferences favorable to the verdict show Burch aided in removing McNelly from his home, forcing him into McIntire's vehicle, and that he restrained McNelly in the vehicle to prevent his escape and facilitate McIntire's repeatedly pummelling McNelly in the face with his elbow. In addition, Burch's presence at the scene and his remaining in McIntire's company through the incident, from the moment they arrived at McNelly's door until they finally released him is circumstantial evidence of Burch's complicity in the kidnapping. Point denied.

▇▇▇ Burch also challenges his conviction of accomplice liability for armed criminal action. A person commits the offense of armed criminal action if he commits a felony by, with, or through the use, assistance or aid of a dangerous instrument or deadly weapon. § 571.015 RSMo 1994. Accomplice liability requires evidence sufficient to support a conviction of the underlying felony and evidence that the underlying felony was committed with a deadly weapon. *State v. Howard,* 896 S.W.2d 471, 496 (Mo.App.1995). As discussed above, the underlying felony here is kidnapping. The kidnapping was facilitated by McIntire's use of a gun to compel McNelly into the vehicle. Burch argues the evidence is insufficient to support a conviction because the gun was unloaded, he did not actually hold the gun to McNelly's head, and he had no advance knowledge that McIntire possessed or planned to use a gun.

▇▇▇ The fact that the gun was not loaded does not render the evidence of armed criminal action insufficient. The state has no

burden to prove that the gun used in the commission of a felony was loaded and operable in order to sustain a conviction of armed criminal action. *State v. Straw,* 742 S.W.2d 579, 580 (Mo.App.1987), *State v. Pettit,* 719 S.W.2d 474, 476 (Mo.App.1986). The statutory definition of a deadly weapon includes any firearm, whether loaded or unloaded. *Straw,* 742 S.W.2d at 581, § 556.061, RSMo 1994.

*State v. Coons,* 743 S.W.2d 112 (Mo.App. 1988) is instructive with regard to the depth of accomplice liability. In *Coons,* the court found sufficient evidence to convict the defendant as an accomplice to robbery. In that case, defendant waited in his car in the parking lot of a gas station while his companion went inside and robbed the station. The robber came out, said, "Let's get out of here," and defendant drove off. Defendant claimed he was unaware of the robbery until after they had driven several miles. The court held the evidence was sufficient to sustain the conviction because, the defendant "need not himself have done all the things that together make up the elements of the crime." *State v. Coons,* 743 S.W.2d 112, 114 (Mo.App.1988); *State v. Arnold,* 566 S.W.2d 185, 187 (Mo.1978). The court further noted that, "the requirement of 'affirmative participation' may be satisfied by inference.... Defendant's presence, companionship and conduct before and after the offense are circumstances from which his participation may be inferred." *Id.*

Again, this court must view the evidence in the light most favorable to the verdict and disregard all evidence to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993). The evidence in this case established that, after McIntire and Burch arrived at McNelly's front door, McIntire pulled a gun, held it to McNelly's head, the two men forced McNelly into a vehicle, and they drove off. Even though Burch was not holding the gun, the evidence established that he was aware of McIntire's displaying the gun and he nonetheless continued to assist in forcing McNelly into the vehicle. That evidence is sufficient to support Burch's conviction for armed criminal action. Point denied.

▮ In his final point, Burch appeals the trial court's denial of his motion for acquittal based on insufficient evidence. Appellant here concedes that there is sufficient evidence that he acted in concert to assault McNelly, but argues there was insufficient evidence of physical injury and use of a dangerous instrument. Section 565.060.1(2) RSMo 1994 defines the crime of Second Degree Assault as attempting to cause or knowingly causing physical injury to another person by means of a dangerous instrument. The issue here is whether under the statutory language, the elbow constitutes a dangerous instrument.

▮ A dangerous instrument is "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." § 556.061(9), RSMo 1994. Serious physical injury is "physical injury that creates a substantial risk of death or ... disfigurement or protracted loss or impairment of the function of any part of the body." § 556.061(28), RSMo 1994. The key consideration in whether an object is a dangerous instrument is whether it can kill or seriously injure under the circumstances in which it is used. *State v. Tankins,* 865 S.W.2d 848, 851 (Mo.App.1993), *State v. Anderson,* 663 S.W.2d 412, 416 (Mo.App. 1983). A dangerous instrument, unlike a deadly weapon, is not designed for use as a weapon and may have a perfectly normal function under ordinary circumstances. *Id.* The defendant in *Wheaden* used his fists to strike his victim just as McIntire used his elbow to strike McNelly. The repeated striking caused bleeding, swelling and bruising to McNelly's head and neck. This court finds that, under the circumstances, McIntire's elbow also qualifies as a dangerous instrument as defined in § 556.061(9). Fists can be a force likely to produce death or great bodily harm within the meaning of the statute defining assault in the first degree. *State v. Wheadon,* 779 S.W.2d 708, 711 (Mo. App.1989).

▮ Burch was convicted under § 565.060.1(2) of assault, second degree. Essentially, the statute requires that one "attempts to cause or knowingly causes physical injury to another person ..." The subsection

does *not* require that McNelly suffer serious physical injury only physical injury which is defined as "physical pain, illness or any impairment of physical condition." § 556.061(20) RSMo 1994.

The evidence of physical injury, here indicates that McNelly was beaten about the head and face, he was bleeding from his eyes, nose and mouth, and there was bruising and swelling about his neck and face. Though covered in blood, McNelly was apparently able to walk away from the incident and did not seek medical attention. The evidence presented here is sufficient to show that Mr. McNelly suffered physical injury as a result of being beaten by McIntire's elbow. Point denied.

Judgment affirmed.

All concur.