STATE of Missouri, Respondent,

v.

Vivian FLETCHER, Appellant.

No. WD 53238.

Missouri Court of Appeals,
Western District.

July 15, 1997.

Susan M. Hunt, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Theodore A. Bruce, Assistant Attorney General, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Vivian Fletcher appeals her conviction for perjury, section 575.040, RSMo 1994, following a jury trial. She was sentenced as a persistent offender, sections 558.016, 557.036.4 and 558.019, RSMo 1994, to ten years imprisonment.

Ms. Fletcher asserts two points on appeal. She claims (1) the evidence was insufficient to prove her guilt of perjury, and, therefore, the trial court erred in denying her motion for judgment of acquittal at the close of all the evidence; and (2) the trial court erred in not suppressing tape-recorded conversations, in that insufficient foundation was presented for their admission, and the tape-recorded conversations were merely cumulative evidence. The judgment of conviction is affirmed.

Ms. Fletcher pleaded guilty on June 13, 1994, to burglary in the second degree for a burglary she committed with Roger Stafford on August 20, 1993, in Dallas County, Missouri. During her guilty plea, Ms. Fletcher testified that she and Roger Stafford discussed committing this burglary over the telephone and that she drove him to the burglarized residence where he exited the vehicle. Under her plea agreement, she received a sentence of incarceration of two years.

Ms. Fletcher's accomplice, Roger Stafford, then went on trial in Polk County, on June 20, 1994, for the burglary committed on August 20, 1993. At that trial, Ms. Fletcher testified on behalf of Roger Stafford and stated that she had told Roger Stafford that she was in the process of buying the house and that she wanted him to move some old furniture out of the house. She also testified that she was blackmailed into "setting up" Roger Stafford by a Buffalo, Missouri police officer named John Maddux. Ms. Fletcher testified that Officer Maddux blackmailed her with tapes of telephone conversations between her and her boyfriend, a person other than Roger Stafford. Roger Stafford was found guilty.

Ms. Fletcher was subsequently charged with perjury based on her testimony at Roger Stafford's trial. At her perjury trial, Officer John Maddux testified that he did not have any tapes of Ms. Fletcher and her boyfriend talking to each other and did not tell her that she must "set up" Roger Stafford to commit a burglary.

Instead, Officer Maddux introduced three tapes of conversations he overheard between Ms. Fletcher and Roger Stafford during which they planned the burglary. Officer Maddux testified that on August 17, 1993, while sitting in a vehicle close to Ms. Fletcher's residence, he monitored these conversations using a commercial scanner that received cordless telephone transmissions. In these tape recorded telephone conversations, Ms. Fletcher is heard telling Roger Stafford that she doesn't know what he may find in the house, but to save her some of what he finds. During these conversations, Ms. Fletcher also tells Roger Stafford to check all of the doors, to wear gloves, to observe whether the air conditioning is operating and to look for tire tracks in the driveway.

Ms. Fletcher was seen driving Roger Stafford to the scene of the burglary on August 20, 1993. At about 11:30 p.m. that night, she slowly drove by the home two to three times before stopping to permit Mr. Stafford to exit the vehicle before driving away from the rural residence. Mr. Stafford approached the house and, after looking around briefly, kicked in a rear door and entered wearing gloves and carrying a flashlight. Police officers were waiting and arrested Mr.

Stafford in the home. Mr. Stafford possessed brass knuckles when he was arrested.

Ms. Fletcher was driving along the rural country road near the burglarized home when she was arrested shortly after Mr. Stafford's arrest. After being advised of her rights, she first stated that she didn't know anything about Roger Stafford or a burglary. She later stated that she drove Roger Stafford to the residence to permit him to visit a girlfriend and that she was to return for him later. She testified during Roger Stafford's trial that her statements to the police were untrue.

Judge James Anderton, who presided over the Stafford trial, also testified at Ms. Fletcher's perjury trial. He stated that during the Stafford trial, Ms. Fletcher was sworn by him to tell the truth and that she testified as a witness. Ms. Fletcher chose not to testify at her own perjury trial.

Ms. Fletcher was found guilty of perjury by the jury. Because she was proven to be a persistent offender, the sentence of ten years imprisonment was imposed by the court. This appeal followed.

### I. Sufficiency of the Evidence

In her first point on appeal, Ms. Fletcher claims that the trial court erred in overruling her motion for judgment of acquittal, or alternatively, for a new trial, on the ground that the evidence was insufficient to prove her guilty of perjury. She argues that the evidence was insufficient to prove the falsity of the statements attributed to her at the trial of Roger Stafford, in violation of her constitutional right to due process of law.

■ Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995); *State v. Idlebird*, 896 S.W.2d 656, 660 (Mo. App.1995). The reviewing appellate court views the evidence in the light most favorable to the state and disregards all evidence and inferences to the contrary. *Id.* It neither weighs the evidence nor determines the relia-

bility or credibility of witnesses. *Idlebird*, 896 S.W.2d at 660–661.

To prevail in a perjury conviction, the state must prove beyond a reasonable doubt that the defendant knowingly and with a purpose to deceive testified falsely "to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, public body, notary public, or other officer authorized to administer oaths." § 575.040.1, RSMo 1994. "A fact is material, regardless of its admissibility, if it could substantially affect, or did substantially affect, the course or outcome of the case, matter or proceeding." § 575.040.2, RSMo 1994.

Ms. Fletcher contends that the statements she made at Roger Stafford's trial were immaterial as a matter of law and were therefore, not perjurious. *State v. Swisher*, 364 Mo. 157, 260 S.W.2d 6, 11 (Mo.1953). She argues that her testimony that she told Mr. Stafford she was in the process of buying the house was not relevant or material to his intent to commit burglary and was, thus, insufficient to sustain a conviction for perjury.

The evidence presented at trial, however, demonstrates that Ms. Fletcher's testimony was material in that it could have affected the outcome of Roger Stafford's trial. Ms. Fletcher sought to convince the jury that Mr. Stafford lacked the requisite mens rea for the crime of burglary—that he intended not to burglarize, but simply to help move furniture out of a house she was in the process of buying. Had the jury believed this implausible statement, Stafford would have been exonerated as the necessary intent element would not have existed. Ms. Fletcher's suggestion that the statement was ultimately ineffective attempts to blur the legal standard. The elements of the offense do not include the requirement that the untrue testimony before a jury successfully deceive the jury.

Ms. Fletcher also argues that the state failed to meet its burden in proving the falsity of her testimony. She cites *State v. Chavez*, where the court held that "proof of numerous conflicting statements by a defendant, even though made under oath, is not

sufficient corroborating evidence of the falsity of sworn testimony." *State v. Chavez*, 735 S.W.2d 127, 131 (Mo.App.1987).

The standard currently promulgated by statute requires "(4) a directly contradictory statement by the defendant under oath together with (a) the direct evidence of one witness; or (b) strongly corroborating circumstances." § 575.070.4, RSMo 1994. A comparison of the transcripts of Ms. Fletcher's guilty plea, and Ms. Stafford's burglary trial provides more than sufficient evidence of "directly contradictory statements." The most obvious contradiction was Ms. Fletcher's testimony in Roger Stafford's trial that it "wasn't my intention to have Roger to [sic] take things out of the house," after admitting only three days earlier in her own plea hearing that she and Stafford had "committed or discussed committing a burglary" on the same house. The taped incriminating telephone conversations and the forced entry by the accomplice validate the position that both individuals believed their endeavor to be a burglary and not simply a quest to move furniture.

The present case is closely analogous to the perjury committed in *State v. Gibson*, 538 S.W.2d 956 (Mo.App.1976). Similar to Ms. Fletcher, the defendant in *Gibson* was charged with perjury arising from testimony he gave at his accomplice's trial, after pleading guilty himself to the crime. Just as in the present case, the defendant's "testimony directly and specifically conflicted with the defendant Gibson's testimony under oath at his guilty plea proceedings...." *State v. Gibson*, 538 S.W.2d 956, 957 (Mo.App.1976). Based on the overwhelming evidence cited, the jury could reasonably have found that Ms. Fletcher committed perjury at the trial of Roger Stafford, and, thus, the evidence was sufficient to support a conviction.

As a part of the perjury charge, Ms. Fletcher was also accused of lying under oath when she testified at Mr. Stafford's trial that she was being "blackmailed" by a police officer, who forced her to "set up" Mr. Stafford for arrest. Ms. Fletcher asserts that the testimony "has no bearing on Roger Stafford's intent because he was unaware of the blackmail." While this testimony was not necessary to find Ms. Fletcher guilty of perjury, considering the other false statements made by her, it was material, contrary to Ms. Fletcher's claim. As was established in *State v. Brinkley*, 354 Mo. 337, 189 S.W.2d 314, 321 (Mo.1945), perjured testimony does not require a direct connection to the subject of inquiry. Rather, it is "sufficient if the testimony be collaterally, corroboratively or circumstantially material and have a legitimate tendency to prove or disprove any material fact pertinent to the inquiry." *Id.* Ms. Fletcher's testimony aimed to bolster her earlier assertion that she had "set up" Roger Stafford, by giving him the impression that he was simply going to "move out some furniture." By attempting to suggest that Mr. Stafford did not maintain the requisite mens rea for the crime, Ms. Fletcher's statement is clearly material. Point one is denied.

## II. Suppression of Evidence

In point two, Ms. Fletcher claims that the trial court erred in overruling her motion to suppress the tape-recorded conversations between her and Mr. Stafford. She argues that a sufficient foundation and chain of custody were not laid for the admission of the tapes and that the tape-recorded conversations were merely cumulative evidence.

The requirements for establishing proper foundation for the admission of tape-recorded conversations are well settled in this state. They require a showing that: (1) the device was capable of recording accurately; (2) the operator of the recording device was competent to operate it; (3) the recording is authentic and correct; (4) changes, additions and deletions have not been made to the recording; (5) the recording has been preserved in an acceptable manner; (6) the speakers are identified; and (7) the conversation was voluntary and without inducement. *State v. Wahby*, 775 S.W.2d 147, 153 (Mo. banc 1989); *State v. Spica*, 389 S.W.2d 35, 44 (Mo.1965), *cert. denied*, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); *State v. Hyler*, 861 S.W.2d 646, 650 (Mo.App.1993). Furthermore, a trial court exercises broad discretion in determining the admissibility of

evidence, and its decision will not be disturbed absent a clear abuse of discretion. *Wahby,* 775 S.W.2d at 153; *State v. Clark,* 711 S.W.2d 928, 932 (Mo.App.1986).

Officer Maddux testified at trial that he had recorded several conversations between Ms. Fletcher and her accomplice. The presence of a tape recording generally satisfies the first requirement for establishing proper foundation. *See State v. Settle,* 670 S.W.2d 7 (Mo.App.1984); *Wahby,* 775 S.W.2d at 153. The second element, competence of the recording operator, can reasonably be inferred from Officer Maddux's testimony, as well as his eleven years of experience as a law enforcement officer. Officer Maddux also testified to the authenticity of the recordings. He spoke to Ms. Fletcher and to Mr. Stafford after their arrest and identified the voices on the recording. Furthermore, Ms. Fletcher does not contest the accuracy of the recording, nor was evidence offered that the conversation was involuntary. The circumstances attending the recorded conversation support the reasonable conclusion that the conversation was voluntary.

Officer Maddux admitted that the tapes were not inclusive of all telephone conversations between Ms. Fletcher and Mr. Stafford. Ms. Fletcher was not under twenty-four-hour surveillance at the time of the recordings. Officer Maddux, nevertheless, testified under oath that the conversations he recorded were complete and accurate. If other conversations between the two people occurred, they were not recorded.

Ms. Fletcher also asserts that an insufficient chain of custody was laid to permit entry of the tape-recorded conversations. The state is not required to show "hand-to-hand" custody. The state must only prove "reasonable assurance" that the evidence was not tampered with. *State v. Jones,* 877 S.W.2d 156 (Mo.App.1994); *State v. Wilbon,* 874 S.W.2d 541 (Mo.App.1994); *State v. Anthony,* 857 S.W.2d 861 (Mo.App.1993). Furthermore, once the recordings are fairly identified, as was done by Officer Maddux, "the chain of custody issue is moot." *Wahby,* 775 S.W.2d at 154.

Point two is denied. The judgment of conviction is affirmed.

All concur.