STATE of Missouri, Respondent,

v.

Andrew FASNUT, Appellant.

No. ED 92513.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 26, 2010.

---

Jo Ann Rotermund, St. Louis, MO, for appellant.

Chris Koster, Jamie Pamela Radmussen, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

## Introduction

Andrew Fasnut (Defendant) appeals from the trial court's judgment entered upon a jury verdict convicting him of the Class C felony of assault in the second degree in violation of Section 565.060 RSMo 2000. We affirm.

## Factual and Procedural Background

The evidence, viewed in the light most favorable to the verdict, reveals as follows.

In December of 2006, Gregory Miller (Victim) was employed as the Campus Minister and Assistant Principal at St. John the Baptist Catholic High School. Because several elementary and high school students had been mugged in the neighborhood as they were traveling home from school, Victim decided that he would monitor certain areas of the school campus after the students were released from class. Victim would sometimes be accompanied at his post by another individual, but when the problem became more serious, Victim and other individuals, including parents and the school's maintenance director John Seylor (Seylor), split up to cover different areas of the campus.

On December 18, 2006, Victim stationed himself in front of the campus front gate to monitor the students as they were leaving the campus. As Victim was standing at his post, he observed Defendant approaching the campus with a friend. Defendant was on foot; his friend was riding a bicycle. Defendant and his friend stopped in front of the edge of a fence that connected with the school's gymnasium and appeared to be loitering. Victim approached Defendant and his friend, and asked if Victim could help them with anything. Defendant glared at Victim and said, "No, you can't help me with anything." Victim asked the two individuals to continue down the sidewalk.

Defendant and his friend proceeded to travel down the sidewalk, passing the campus's front gate, rectory, and convent building. They stopped in front of a brick wall on the edge of the convent building, which is adjacent to the campus's elementary school building. Victim continued to observe the two individuals and was concerned because the elementary grade stu-

dents were about to be released; three elementary students had been mugged earlier in the year. Victim's discomfort prompted him to ensure Defendant and his friend moved on, and he started to approach the two individuals again. Realizing he was alone and that no one was aware of what he was doing or where he was going, Victim stopped, took out his cell phone, and started to turn around. At that point, Defendant yelled at Victim, "Yeah, you better walk away, you pussy." Victim turned back to face the two men, and told them, "Get off this property, I am calling the police right now." Victim then proceeded to call the police.

Defendant and his friend started walking very purposefully to Victim, so Victim started walking backward as his phone was ringing, then turned and began to run. When Victim realized that his call was not going to connect in time, he started to turn to face the men, and Defendant struck Victim on the left temple. Victim did not know what Defendant used to strike him.

As Victim was struck, he started to fall backwards. Defendant and his friend ran away. Victim picked himself up from the ground and tried to pursue them. As he was running, Victim completely lost vision in his left eye, because a skin flap from his wound fell over his eye, covering it. At this time, Victim heard several parents yelling. Seylor and some of the parents stopped Victim from pursuing the two men, and convinced him to sit down. Victim was very concerned that he could not see with his left eye, and he may have been in shock.

Victim reported the attack to the police that day. He sought medical treatment at St. Mary's Health Center for his facial injury. The surgeon who repaired his wound had to apply two layers of stitches. Victim has a scar from the wound.

Seylor testified that he also was patrolling the school campus on December 18, 2006. Seylor saw two men chasing Victim that afternoon. The shorter man grabbed Victim and spun him around, and the taller man hit Victim in the face. Seylor saw the taller man pull his right hand out of his jacket and strike Victim in the face with an object that appeared to be brass knuckles. The instrument looked like it was banded across four of the man's fingers. Victim then fell to the ground. Seylor ran to help Victim, and the two attackers fled. Seylor and a parent attempted to chase the two men, but they got away. Seylor told Victim to sit down. Victim's wound was bleeding and a flap of skin draped over Victim's left eye and cheek.

During Seylor's testimony, the State showed Seylor a set of brass knuckles, announcing that they were going to be used as demonstrative evidence. Seylor identified them as brass knuckles, stating that he had seen similar items before. Seylor confirmed that he was not saying that the brass knuckles being shown were those used to strike Victim. Seylor testified that the instrument Victim's attacker used was similar to the brass knuckles shown. After Seylor discussed the brass knuckles, the State addressed the jury:

> Ladies and gentlemen, this is used for demonstrative purposes. The State is not alleging that these are the brass knuckles that were used in December of 2006, and are only to show you all what brass knuckles look like.

Following deliberation, the jury found Defendant guilty of assault in the second degree. The trial court sentenced Defendant to a one-year term of imprisonment in a medium security institution, but suspended execution of Defendant's sentence, ordering that Defendant serve 60 days of shock incarceration and be placed on probation for a period of two years.

## Points on Appeal

In his first point on appeal, Defendant claims the trial court erred when it overruled his motion for judgment of acquittal at the close of all the evidence as to the assault-in-the-second-degree count, because the State failed to prove beyond a reasonable doubt that Defendant caused physical injury to Victim by means of a dangerous instrument. He argues that Victim did not see any brass knuckles, that Seylor only guessed that he saw brass knuckles, and that Seylor said merely that he thought he saw something banded across all the attacker's fingers. Defendant argues this alleged error violated his rights to due process, to equal protection, to confront witnesses, and to a fair and impartial jury as expressed under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution; Article I, Sections 2, 10, 18(a) and 22(a) of the Missouri Constitution; and the laws of Missouri.

In his second point on appeal, Defendant claims the trial court plainly erred, or abused its discretion, over timely objection by defense counsel, by allowing the State to admit brass knuckles for demonstrative purposes when no witness could say with certainty that brass knuckles were used in the attack. Defendant claims this alleged error violated his rights to due process, to equal protection, to confront witnesses, and to a fair and impartial jury as expressed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 10, and 18(a) of the Missouri Constitution.

## Standard of Review

In determining the sufficiency of the evidence to support a conviction, we consider as true all evidence that tends to support the verdict, and disregard all contrary evidence. *State v. Wahby,* 775 S.W.2d 147, 153–54 (Mo. banc 1989). We view the record in the light most favorable to the state, accepting as true all favorable inferences drawn from the evidence. *Id.* Our review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found a defendant guilty beyond a reasonable doubt. *State v. Burch,* 939 S.W.2d 525, 529 (Mo.App. W.D.1997).

A trial court is vested with broad discretion in deciding whether to admit or reject demonstrative evidence, due to its superior ability to balance the probative value of such evidence against its prejudicial effect. *State v. Candela,* 929 S.W.2d 852, 867 (Mo. App. E.D.1996). Such evidence is admissible if it tends to establish any fact in issue or throws light on the controversy and aids the jury in arriving at a correct verdict. *Id.*

## Discussion

### Point I

■ In his first point on appeal, Defendant claims the trial court erred when it overruled his motion for judgment of acquittal at the close of all the evidence as to the assault-in-the-second-degree-count, because the State failed to prove beyond a reasonable doubt that Defendant caused physical injury to Victim by means of a dangerous instrument.

Section 565.060.1 RSMo 2000, defines the crime of assault in the second degree and provides, in pertinent part:

A person commits the crime of assault in the second degree if he:

\* \* \*

(2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument[.]

Defendant argues that Victim did not see any brass knuckles, that Seylor only guessed that he saw brass knuckles, and that Seylor said merely that he thought he saw something banded across all the attacker's fingers. Thus, Defendant challenges the sufficiency of the evidence supporting the use of a dangerous instrument.

During trial, Seylor testified that he saw Victim's assailant strike Victim in the face with what looked to Seylor to be brass knuckles. Seylor stated that the instrument used appeared to be banded across four of the assailant's fingers.

A dangerous instrument is "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Section 556.061(9); *Burch*, 939 S.W.2d at 530. Serious physical injury includes "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss of impairment of the function of any part of the body." Section 556.061(28); *Burch*, 939 S.W.2d at 530.

■ We conclude that under the circumstances, the instrument used by Defendant to strike Victim in the face qualifies as a dangerous instrument as defined in Section 556.061(9).[1] Furthermore, the evidence of physical injury suffered by Victim shows that Victim was struck hard enough to drop him to the ground and to inflict a bleeding wound that left a skin flap covering his eye and his cheek, required two layers of stitches to repair, and caused a permanent facial scar. The nature of a victim's wound is sufficient to support a reasonable inference that a dangerous instrument was used by his attacker. *State v. Folson*, 197 S.W.3d 658, 663

(Mo.App. W.D.2006). The evidence presented here is sufficient to show that Victim suffered serious physical injury as a result of Defendant's use of a dangerous instrument similar to brass knuckles.

We conclude there is sufficient evidence from which a reasonable juror might have found a defendant guilty beyond a reasonable doubt of assault in the second degree. *Burch*, 939 S.W.2d at 529–30.

Point denied.

### Point II

■ In his second point on appeal, Defendant claims the trial court plainly erred or abused its discretion, over timely objection by defense counsel, by allowing the State to admit brass knuckles for demonstrative purposes when no witness could say for sure if brass knuckles were used in the attack.

Trial courts have broad discretion in admitting demonstrative evidence. *Candela*, 929 S.W.2d at 867. We will not reverse the trial court's decision regarding such evidence absent an abuse of discretion. *State v. Freeman*, 269 S.W.3d 422, 426 (Mo.2008). A trial court abuses its discretion when its determination is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.*

When offered for the limited purpose of demonstration, an object may be properly admitted, even if not connected with the defendant or charged offense, as long as the object is relevant, is a fair representation of what it is purported to demonstrate, and is not inflammatory, deceptive or misleading. *Id.* at 427. Here, the brass knuckles were logically relevant and a fair representation of what they purport-

---

1. We note that "metal knuckles" are expressly listed under Section 556.061(10)'s definition of "deadly weapon."

ed to demonstrate due to Seylor's testimony that he saw Defendant strike Victim with an instrument that appeared to be brass knuckles. Additionally, the brass knuckles shown were not inflammatory, deceptive or misleading. Seylor testified he was not saying that he saw Defendant strike Victim with the brass knuckles shown to him, but rather that what he observed Defendant wearing on his hand was similar to the exhibit. Moreover, the State made it clear that the brass knuckles were being presented for demonstrative purposes only. The trial court did not abuse its discretion in allowing the brass knuckles as demonstrative evidence.

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, P.J., and GEORGE W. DRAPER III, J., concur.